KING, P.J.,
for the Court.
¶ 1. The Lowndes County Chancery Court granted Wanda S. Holley a divorce from Danny L. Holley on the ground of adultery. The chancellor ordered Mr. Holley to pay Mrs. Holley $2,000 per month as periodic alimony and $400 per child per month as child support, and divided the marital assets. Aggrieved, Mr. Holley has appealed and assigned the following issues for consideration on appeal:
I. Whether the chancery court erred in the amount of its award of periodic alimony to Mrs. Holley.
II. Whether the chancery court erred in the amount of child support awarded to Mrs. Holley.
FACTS
¶ 2. The Holleys were married on September 25, 1982. They had three children, Hope Marie Holley, born September 11, 1984, Daniel Sloan Holley, born February 25, 1986, and John Hampton Holley, born September 13, 1989. All three children lived with the couple while they were together. Since the couple separated in February 2001, the children have resided with Mrs. Holley in the marital residence.
¶ 3. Mr. Holley testified that during the marriage/separation, he had an adulterous relationship and has undergone treatment for problems with alcohol.
¶ 4. Mr. Holley is employed by a stock brokerage firm in Columbus where he is branch manager and a broker. The chancellor found that Mr. Holley “has gross earnings for the year 2001 of $136,010.69. His average gross earnings for the past six years is $147,788. His deductions for federal and state income taxes, medicare, social security, and medical insurance for the year 2001 total $44,443.87. He lists total monthly expenses on his 8.05 Financial Statement (Exhibit No. D-2) of $3,565, approximately $1,000 of which is a projected increase after divorce and another $888 of which is for school, dental, and automobile expenses for the children.”
¶ 5. Mrs. Holley is a partner in an accounting firm in Columbus. The chancellor found that “[ajccording to her last 8.05 Financial Statement (Exhibit No. D-13), she earns a gross monthly income of $6,112 and a net monthly income of $3,245. This includes a year end bonus and her earnings as organist at her church. Her monthly living expenses on this statement are $4,176 and the children’s monthly expenses are $4,183. She testified she added to her monthly expenses in anticipation of a divorce. Since June 2001, she has incurred debts of $6,630 and Dan has contributed an additional $4000. She has only paid the interest due on the house loan with the exception of one payment of $500.”
¶ 6. The chancellor determined that “the total value of the marital assets is $908,761, less Wanda’s indebtedness of $6,630 and $17,447, and less the balance on the residential mortgage of $78,000. The net value of the marital assets is $806,684.”
¶ 7. After having reviewed the evidence presented, the chancellor awarded Mrs. *242 Holley periodic alimony in the amount of $2,000 per month for a period of sixty months, and child support in the amount of $400 per child per month. The chancellor divided the marital assets as follows:

Mrs. Holley shall have the following:

Asset Value
Residence House and Lot, with Wanda to pay the remaining mortgage of $78,000 $ 315,000
Furnishings $ 12,700
2001 Volvo $ 27,500
' 1987 Volvo $ 2,500
Her Jewelry $ 3,500
Checking Account (Wanda) $ 1,243
Savings (Joint) $ 90,258
IRA (Wanda) $ 16,391
401(k) (Wanda) $ 44,387
Watkins, Ward & Stafford (Wanda) $ 12,044
Total: $ 525,523
**Along with mortgage debt, Wanda shall be responsible for her outstanding accounts of $6,333 and her partnership loan of $17,447.

Mr. Holley shall have the following marital assets:

1997 Ford $ 13,000
Gun, Boat, 4 wheeler, golf clubs, smoker, hunting and fishing equip. $ 3,465
Checking Account (Dan) $ 10,746
Savings (Joint) $ 25,000
401(k)(Dan) $ 317,000
IRA (Dan) 05 to CO
Profit Sharing (Dan) $ 10,098
Bed, mattress and box springs, dining room table and chairs and upstairs den couch $ 2,300
Total: $ 382,238
*243 ISSUES AND ANALYSIS
I.
Whether the chancery court erred in the amount of its award of periodic alimony to Mrs. Holley.
¶ 8. Mr. Holley contends that the chancery court erred in the amount of its award of periodic alimony to Mrs. Holley. He maintains that if the alimony factors listed in Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993)[1] were considered, it would be unrealistic to expect him to pay Mrs. Holley $2,000 per month as alimony.
¶ 9. The determination of whether an award of alimony is appropriate requires the chancellor to consider (1) the reasonable needs of the wife and (2) the right of the husband to maintain a normal life with a decent standard of living. Gray v. Gray, 562 So.2d 79, 83 (Miss.1990).
¶ 10. Any question as to whether to award alimony and the amount of alimony awarded is largely within the discretion of the chancellor. Moore v. Moore, 803 So.2d 1214 (¶ 17) (Miss.Ct.App.2001). We will not disturb the chancellor’s award on appeal unless it is a product of manifest error or against the overwhelming weight of the evidence. Id. In the case of a claimed inadequacy or outright denial of alimony, we will interfere only where the decision is seen as oppressive, unjust or grossly inadequate so as to evidence an abuse of discretion. • Id.
¶ 11. According to Mr. Holley, for the eight months following his return from the rehabilitation center in 2001, his average monthly gross income was approximately $4,791 with an average monthly adjusted gross income of $3,111. Mr. Holley alleges that his 2001 production dropped forty percent as compared with his production for 2000. He suggests that there is no reasonable likelihood of an increase in his production, profits and income. However, the chancellor found that Mr. Holley had gross income of $136,010.00 in 2001, and an average gross income of $147,788 for the six previous years.
¶ 12. Alimony is not designed to punish, but rather to assist the spouse in meeting his or her reasonable needs, while transitioning to a new life. Tilley v. Tilley, 610 So.2d 348, 354 (Miss.1992). Mr. Holley suggests that the chancellor’s award is so heavy as to be punishment.
¶ 13. The chancellor has failed to provide this Court with a clear analysis of the factors upon which he relied to determine if alimony was appropriate and the amount. Instead, the chancellor noted:
Considering the needs of Wanda and the manner of living to which she has become accustomed, and that she must *244 adjust to a new life of financial independence, as well as Dan’s earning capacity and ability to pay, the Court finds that the marital assets, cannot be equitably divided and alimony avoided.
[[Image here]]
Factors to be considered in the determination of alimony are set forth in Armstrong v. Armstrong, 618 So.2d 1278 (Miss.1993) and Hemsley v. Hemsley, [639 So.2d 909 (Miss.l994)]supra. The Court finds that Wanda is entitled to periodic alimony while she is adjusting to a new life of financial independence and providing care for the children. Accordingly, she is awarded periodic alimony of $2,000 per month for a period of sixty (60) months beginning on the first day of March 2002, and continuing on the first day of the next fifty-nine (59) months thereafter. This alimony obligation shall terminate upon Wanda’s remarriage or the death of either party.
¶ 14. The record before this Court establishes that Mrs. Holley is a partner in an accounting firm with a gross monthly income of approximately $6,112. A wife is generally entitled to periodic alimony when her income is inadequate to allow her to maintain her standard of living and when her husband is able to pay. Kilpatrick v. Kilpatrick, 732 So.2d 876(¶21) (Miss.1999).
¶ 15. The Holleys had net marital assets of $806,684, of this sum Mrs. Holley received marital assets with a value of $525,523, and a net value of $423,446.
¶ 16. In addition to these assets, Mrs. Holley was to have the benefit of (1) $1200 per month child support, (2) a medical insurance policy for the children provided by Mr. Holley, (3) the payment by Mr. Holley of 65 % of non-covered medical expenses, and (4) college expenses not covered by the college savings accounts.
¶ 17. Mr. Holley received marital assets with a net value of $382,238.
¶ 18. When the entirety of the record is carefully reviewed, the evidence is inconsistent with an award of alimony. The chancellor’s decision to award alimony was therefore manifest error; accordingly, we reverse and render the award of alimony.
II.
Whether the chancery court erred in the amount of child support awarded to Mrs. Holley.
¶ 19. Mr. Holley contends that the chancellor abused his discretion in exceeding the presumptive amount for child support in the Mississippi Code Annotated Section 43-19-101 (Rev.2000)[2] and erred by failing to make specific findings as to *245 why the statutory guidelines were unjust or inappropriate. The chancellor ordered Mr. Holley to pay $400 per child per month, “continue to provide health insurance coverage for each child, for so long as he is obligated to pay child support for that child, and shall bear the costs of any deductible and 65% of the cost of medical, dental or other health related expenses for each child that is not covered by insurance, and Wanda 35% of said expenses.” The chancellor further ordered that after the education funds set up by the parties for their children are consumed, Mr. Holley shall pay 65% of all additional sums required for the children’s college related expenses. The chancellor ordered that “so long as Danny L. Holley’s child support or college expense obligations shall be effective, he shall maintain life insurance on his life in an amount not less than $50,000 for each child with the children or child named as beneficiaries.” Mr. Holley asserts that these additional expenses are a form of child support and constitute an abuse of the chancellor’s discretion since they further increase his periodic support obligation beyond that required under the statutory guidelines. Mississippi Code Annotated Section 43-19-103 (Rev.2000)[3] provides the exceptions to the guidelines in determining the amount awarded for child support.
¶ 20. In reviewing domestic relations cases, this Court “will not disturb the chancellor’s findings unless manifestly wrong, clearly erroneous, or if the chancellor applied an erroneous legal standard.” Osborn v. Osborn, 724 So.2d 1121(¶ 11) (Miss.Ct.App.1998). The supreme court has also stated that “[sjuffiee it to say a judicial award making a written or a specific finding different from the guidelines defeats the presumption and leaves, as this Court believes the Legislature intended in the normal case, child support determination in the hands of the customary chancery court proceeding. Certainly the guidelines are relevant and may be considered by a chancellor as an aid, but the guidelines may not determine the specific need or the specific support required. This is to be done by a chancellor at a time real, on a scene certain, and with a knowledge special to the actual circumstances and to the individual child or children.” *246 Grogan v. Grogan, 641 So.2d 734, 740 (Miss.1994).
¶ 21. In this case, the chancellor stated in his written judgment that:
The child support guidelines set forth in Section 43-19-101, Mississippi Code Annotated, apply except in cases in which the adjusted gross income as defined in this section is more than $50,000. In the case sub judice Dan’s income is greater than $50,000. Accordingly, in addition to the guidelines, the Court has considered those factors set forth in Dufour v. Dufour, 631 So.2d 192 (Miss. 1994) and finds that Dan should pay monthly child support of $400 per child, which the Court finds is reasonable and sufficient to meet the needs of the children.
The factors set forth in Dufour, 631 So.2d 192 at 194 are:
(1) the health of the husband and his earning capacity;
(2) the health of the wife and her earning capacity;
(3) the entire sources of income of both parties;
(4) the reasonable needs of the wife;
(5) the reasonable needs of the child;
(6) the necessary living expenses of the husband;
(7) the estimated amount of income taxes the respective parties must pay on their incomes;
(8) the fact that the wife has the free use of the home, furnishings and automobile, and
(9) such other facts and circumstances bearing on the subject that might be shown by the evidence.
¶22. Based on the facts presented in this case, this Court finds that the chancellor was not in error in deviating from the child support guidelines. Therefore, we affirm on this issue.
¶ 23. THE JUDGMENT OF THE LOWNDES COUNTY CHANCERY COURT AS TO CHILD SUPPORT IS AFFIRMED AND REVERSED AND RENDERED AS TO ALIMONY. ALL COSTS OF THIS APPEAL ARE EQUALLY ASSESSED TO THE APPELLANT AND APPELLEE.
McMILLIN, C.J., SOUTHWICK, P.J., BRIDGES, THOMAS, LEE, IRVING, MYERS, AND GRIFFIS, JJ., CONCUR. CHANDLER, J., NOT PARTICIPATING.

.The following factors are to be considered by the chancellor in arriving at findings and entering judgment for alimony:
1. The income and expenses of the parties;
2. The health and earning capacities of the parties;
3. The needs of each party;
4. The obligations and assets of each party;
5. The length of the marriage;
6. The presence or absence of minor children in the home, which may require that one or both of the parties either pay, or personally provide, child care;
7. The age of the parties;
8. The standard of living of the parties, both during the marriage and at the time of the support determination;
9. The tax consequences of the espousal support order;
10. Fault or misconduct;
11. Wasteful dissipation of assets by either party; or
12. Any other factor deemed by the court to be "just and equitable” in connection with the setting of espousal support.

. Mississippi Code Annotated Section 43-19-101 (Rev.2000): Calculating support: (1) The following child support award guidelines shall be a rebuttable presumption in all judicial or administrative proceedings regarding the awarding or modifying of child support awards in this state:
Number Of Percentage Of Adjusted Gross
Children Income That Should Be
Due Support Be Awarded For Support
1 14%
2 20%
3 22%
4 24%
5 or more 26%
(2) The guidelines provided for in subsection
(1) of this section apply unless the judicial or
administrative body awarding or modifying the child support award makes a written finding or specific finding on the record that the application of the guidelines would be unjust or inappropriate in a particular case as determined under the criteria specified in Section 43-19-103.
[[Image here]]
(4) In cases in which the adjusted gross income as defined in this section is more than Fifty Thousand Dollars ($50,000.00) or less than Five Thousand Dollars ($5,000.00), the court shall make a written finding in the record as to whether or not the application of the guidelines established in this section is reasonable.

. Mississippi Code Annotated Section 43-19-103 (Rev.2000) provides: The rebuttable presumption as to the justness or appropriateness of an award or modification of a child support award in this state, based upon the guidelines established by Section 43-19-101, may be overcome by a judicial or administrative body awarding or modifying the child support award by making a written finding or specific finding on the record that the application of the guidelines would be unjust or inappropriate in a particular case as determined according to the following criteria:
(a) Extraordinary medical, psychological, educational or dental expenses.
(b) Independent income of the child.
(c) The payment of both child support and spousal support to the obligee.
(d) Seasonal variations in one or both parents’ incomes or expenses.
(e) The age of the child, taking into account the greater needs of older children.
(f) Special needs that have traditionally been met within the family budget even though the fulfilling of those needs will cause the support to exceed the proposed guidelines.
(g) The particular shared parental arrangement, such as where the noncustodial parent spends a great deal of time with the children thereby reducing the financial expenditures incurred by the custodial parent, or the refusal of the noncustodial parent to become involved in the activities of the child, or giving due consideration to the custodial parent’s homemaking services.
(h) Total available assets of the obligee, ob-ligor and the child.
(i) Any other adjustment which is needed to achieve an equitable result which may include, but not be limited to, a reasonable and necessary existing expense or debt.