869 So.2d 1058 (2004)
William David BURCHAM, Appellant,
v.
Lisa Johnson BURCHAM, Appellee.
No. 2002-CA-01868-COA.
Court of Appeals of Mississippi.
March 23, 2004.
*1059 Earl P. Jordan, James A. Williams, Meridian, attorneys for appellant.
Lawrence Primeaux, Meridian, attorney for appellee.
Before McMILLIN, C.J., IRVING and MYERS, JJ.
McMILLIN, C.J., for the Court:
¶ 1. Lisa Burcham and David Burcham ended their marriage by consenting to a divorce on the ground of irreconcilable differences. Unable to resolve certain financial aspects of the dissolution of the marriage, the parties entered into a written stipulation submitting the unresolved issues to the chancellor for determination. Mr. Burcham, finding himself dissatisfied with certain aspects of the chancellor's ruling, has appealed to this Court and raises three issues. In summary, they are (a) that the chancellor erred in establishing a level of child support that exceeded the statutory guidelines; (b) that the chancellor abused her discretion by being unreasonably generous in making provision for the post-divorce support of Mrs. Burcham both as to the equitable distribution of marital assets and the requirement of permanent periodic alimony; and (c) that the chancellor erred in requiring Mr. Burcham to pay attorney's fees for Mrs. Burcham's representation in the divorce proceeding.
¶ 2. We find that the issue of the judicially-determined level of child support is not properly preserved for appellate review and affirm on that basis. We determine that the remaining provisions of the chancellor's ruling relating to financial matters complained of by Mr. Burcham fall within the realm of discretionary authority afforded the chancellor in resolving a domestic relations case and, for that reason, we affirm as to them also. Finally, we affirm the award of attorney's fees.

I.

Facts
¶ 3. The parties were married on November 6, 1993. They obtained a judgment for divorce on January 30, 2002. One child was born of the marriage on March 3, 1995. The child's name is William Bradly Burcham. Mr. Burcham was forty-two years of age at the time of divorce and worked on an off-shore oil rig as a tool pusher. Mrs. Burcham had formerly worked as a cosmetologist prior to the marriage but was not engaged in employment outside the home during most of the marriage, instead devoting herself to the care of the couple's child and her two other *1060 children from a previous marriage. After the parties separated, Mrs. Burcham had worked in several different fields and was earning approximately $12,000 per year. She has not returned to the field of cosmetology. Mr. Burcham's employment resulted in earnings of approximately $72,000 annually. Mr. Burcham had accumulated substantial sums in several retirement related accounts with his employer which totaled in the aggregate approximately $40,000. The proof further showed that he had exercised several stock purchase options available through his employer, one prior to the parties' separation and one after, and that he realized a combined sum of approximately $25,000 cash from those transactions. In addition, he withdrew approximately $8,700 from his pension fund after the separation and used approximately $5,400 of the money to pay existing family debts and a fine and legal fees in conjunction with his arrest on charges of driving while intoxicated. The remaining balance of just over $3,200 was divided between the parties.
¶ 4. The chancellor, in resolving the various matters entrusted to her for decision under the required written stipulation filed by the parties, established child support at the rate of $650 per month. As for the equitable division of marital assets, the parties agreed that the house would ultimately be sold and the proceeds divided equally. Additionally, the chancellor determined that all funds in Mr. Burcham's various retirement funds accumulated during the marriage should be divided equally. In an effort to equalize somewhat Mr. Burcham's receipt of stock option funds and retirement withdrawals, the chancellor ordered Mr. Burcham to assume sole responsibility for all indebtedness listed in his statement of economic interest except the home mortgage-a total debt figure of approximately $31,000while requiring Mrs. Burcham to assume sole liability for less that $7,000 of existing indebtedness.

II.

Issue One: Child Support
¶ 5. Mr. Burcham now complains that the chancellor erred in setting child support at the figure of $650 per month because the proof showed that Mr. Burcham's income exceeded the $50,000 annual sum mentioned in Section 43-19-101(4) and the chancellor did not make specific findings of fact as to the needs of the child and the justification for setting child support according to the statutory percentage or on some other basis, thus making the award a purely arbitrary amount and an abuse of the chancellor's discretion.
¶ 6. We find that Mr. Burcham is barred from raising this issue on appeal. During the course of his testimony, both on direct and on cross-examination, Mr. Burcham agreed that the proposed figure of $650 per month was a fair and reasonable sum for him to pay as child support. The following exchange occurred between Mr. Burcham and his attorney:
Q. And you're willing, as I understand it, we have agreed, and I think it's eight cents off on your last year's income tax return to pay $650 a month child support?
A. Yes, sir.
¶ 7. In the chancellor's memorandum opinion, which was entered at the conclusion of this matter without objection from Mr. Burcham, the chancellor found as follows:
[Mr. Burcham] is employed off shore on an oil rig, and makes a gross monthly income of $7,127.00. He [Mr. Burcham] opined that $650.00 per month is reasonable child support, and prefers to pay his child support directly rather than *1061 through the Twelfth Chancery Court District Bank Plan for Child Support.
¶ 8. The ensuing formal judgment, plainly based upon the chancellor's memorandum opinion, set child support in that amount. No post judgment motion seeking reconsideration or urging some misapprehension on the part of the chancellor in making these findings was filed; rather, the judgment was followed only by Mr. Burcham's notice of appeal.
¶ 9. It is a fundamental concept of appellate law that matters, in the normal course, may not be raised for the first time on appeal, but rather have to be presented for decision first to the trial court. Scally v. Scally, 802 So.2d 128(¶ 27) (Miss.Ct.App. 2001).
¶ 10. In Seeley v. Stafford, this Court said that "a non-custodial parent may agree to pay child support in an amount greater than the guideline set forth in Miss.Code Ann. § 43-19-101 (Rev. 2000). Certainly, the parties have a right to agree to provide more support for their children than the guidelines require." Seeley v. Stafford, 840 So.2d 111(¶ 16) (Miss.Ct.App.2003). In Seeley, the agreement to pay more than the guidelines require was formally incorporated into a written agreement executed by the parties whereas in this instance Mr. Burcham's agreement is evidenced by his testimony from the witness stand. However, we do not conclude that this distinction between the form of the agreement suggests the necessity for a different treatment of a commitment by the parent that was voluntarily undertaken.

III.

Equitable Distribution and Periodic Alimony
¶ 11. In addition to the equitable distribution discussed earlier, the chancellor found that, in order to fairly resolve the various economic considerations associated with the dissolution of this marriage, Mr. Burcham should be required to pay the sum of $400 per month in periodic alimony to Mrs. Burcham.
¶ 12. On appeal, Mr. Burcham contends that, when the two awards are considered together, the financial benefit to Mrs. Burcham is so overly generous as to constitute an abuse of discretion on the part of the chancellor. Mr. Burcham, in support of that contention, argues that the marriage was of too short a duration to warrant periodic alimony and that the chancellor improperly narrowed the factors under consideration in fashioning these awards to the disparate post-divorce income of the two parties, neglecting to consider other factors mandated by case law.
¶ 13. We find both contentions to be without merit. The chancellor, in making the required equitable division of assets accumulated during the marriage, gave attention to the various considerations mandated by the Mississippi Supreme Court in Ferguson v. Ferguson, 639 So.2d 921 (Miss.1994). Included in her decision was the fact that Mrs. Burcham had contributed to the welfare of the family by acting as the family caretaker while Mr. Burcham served as the primary source of income to meet family needs. The division of assets was essentially equal except for the fact that the chancellor ordered Mr. Burcham to assume responsibility for a larger share of the existing family-related indebtedness. However, this unequal division was explained as being based partly on the fact that Mr. Burcham had expended family resources in expenses related to his DUI charges, that his behavior had been a contributing factor in the deterioration of the marriage, and, finally, that his post-divorce income put him in a much better financial *1062 posture to deal with these debts than Mrs. Burcham would have been able to do.
¶ 14. There is no requirement that marital assets be divided equally. Parsons v. Parsons, 741 So.2d 302(¶ 23) (Miss.Ct.App.1999) (citing Ferguson, 639 So.2d at 927). In making the division, the chancellor is afforded substantial discretion and an appellate court may properly reverse only on determining that the chancellor has abused that discretionary authority. Young v. Young, 796 So.2d 264(¶ 7) (Miss.Ct.App.2001) (citing Arthur v. Arthur, 691 So.2d 997, 1003 (Miss.1997); Ferguson, 639 So.2d at 930). In this case, the chancellor set out reasoned explanations for the basis of her division and we do not find that she abused her discretion in making that division.
¶ 15. After making that division, the chancellor must next consider an award of alimony, taking into account a number of factors set out in Armstrong v. Armstrong, 618 So.2d 1278 (Miss.1993). In this case, it is apparent that, even taking into account the property received in the equitable division, Mrs. Burcham was faced with substantially less available sums to meet her anticipated living expenses than was Mr. Burcham. After considering Mrs. Burcham's reasonable post-divorce earning potential and other factors, including fault in the marriage break-up attributable to Mr. Burcham's behavior, the chancellor concluded that a sum of periodic alimony was appropriate in order to more fairly provide for the needs of both parties after their divorce. Under Armstrong, the duration of the marriage is but one consideration and, while seven years may not be an extremely long period, the fact remains that during that time Mrs. Burcham quit her regular employment to have a child and provide care for that child and to keep a home for the family. This interruption in her working career for such a period of time could reasonably be seen as permanently diminishing her potential for more lucrative forms of employment, which is in sharp contrast to Mr. Burcham's post-divorce earnings outlook.
¶ 16. In view of the lack of available assets to provide a steady source of income to Mrs. Burcham after the divorce and taking into consideration Mr. Burcham's on-going capacity to make relatively large sums of money in his chosen employment, we do not find that the chancellor abused the discretion given her in such matters when she set periodic alimony at $400 per month.

IV.

Attorney's Fees
¶ 17. The chancellor awarded Mrs. Burcham attorney's fees of $3,500. Mr. Burcham contends this was in error because there was no evidence that, without the award, Mrs. Burcham would be unable to defray the costs of her own representation in the divorce. E.g., Russell v. Russell, 733 So.2d 858(¶ 16) (Miss.Ct.App. 1999).
¶ 18. The awards to Mrs. Burcham out of the divorce were relatively meager and were plainly intended by the chancellor to be available to her to provide housing and basic living expenses for her and the child born of the marriage. In that situation, to require her to expend a substantial portion of the funds received in the equitable division of assets in order to pay her attorney's fees would defeat the purpose of the award by the chancellor to a large extent. Beyond those assets received in the equitable division, there is no evidence that Mrs. Burcham possessed other separately-held assets or untapped earning capacity that would be available to meet her attorney's fees.
*1063 ¶ 19. In that situation, we find that the chancellor did not abuse her discretion in requiring Mr. Burcham to contribute toward Mrs. Burcham's cost of representation. We, therefore, affirm the award of attorney's fees.
¶ 20. THE JUDGMENT OF THE CHANCERY COURT OF LAUDERDALE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO APPELLANT.
KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.